**989-15**

NO. PD-0989-15

ORIGINAL

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

ARTURO SANCHEZ ALMAGUER,

Appellant/Petitioner

VS.

THE STATE OF TEXAS,

Appellee/Respondent

---

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

PRO SE

---

In Appeal No. 13-14-00312-CR

from the

Court of Appeals

for the Thirteenth Judicial District

Corpus Christi - Edinburg, Texas

RECEIVED IN
COURT OF CRIMINAL APPEALS

AUG 26 2015

Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS

AUG 27 2015

Abel Acosta, Clerk

Arturo Sanchez Almaguer
TDCJ#01918635
W.G. McConnell Unit
3001 S. Emily Dr.
Beeville, Texas 78102

i.

## LIST OF PARTIES

APPELLANT

Arturo Sanchez Almaguer

APPELLEE

The State of Texas

DEFENSE COUNSEL AT TRIAL

Rogelio Garza                     Pam Alexander
310 W. University Dr.             4009 S. Sugar Road
Edinburg, Texas 78539             Edinburg, Texas 78539
(956) 316-1375                    (956) 397-2754

STATE'S ATTORNEY AT TRIAL

Victoria Muniz
Hidalgo County DA's Office
Asst.Criminal District Attorney
100 N. Closner
Edinburg, Texas 78539

APPELLANT'S ATTORNEY AT 13th COURT OF APPEALS

Oscar Rene Flores
O. Rene Flores, P.C.
1308 S. 10th Avenue
Edinburg, Texas 78539

STATE'S ATTORNEY ON APPEAL

Theodore "Ted" Hake
Hidalgo County DA's Office
Appellate Division
100 N. Closner
Edinburg, Texas 78539

STATE'S PROSECUTING ATTORNEY

P.O. Box 12405
Austin, Texas 78711

## TABLE OF CONTENTS

IDENTITY OF PARTIES.................................................ii

INDEX OF AUTHORITIES..............................................iv,v

STATEMENT REGARDING ORAL ARGUMENT................................. Pg.1

STATEMENT OF CASE ...............................................Pg.2

STATEMENT OF PROCEDURAL HISTORY..................................Pg.3

GROUNDS FOR REVIEW ..............................................Pg.4

### GROUND NUMBER ONE

Court of Appeals erred by not following established precedent in the review to determine if the evidence was legally sufficient to support the capital murder conviction.

### GROUND NUMBER TWO

Court of Appeals was without applicable precedent to "test" proof "beyond a reasonable doubt." on appeal.

ARGUMENT NUMBER ONE ............................................Pg.5

ARGUMENT NUMBER TWO............................................ Pg.9

PRAYER FOR RELIEF............................................. Pg.14

CERTIFICATE OF SERVICE........................................Pg.15

COA, MEMORANDUM OPINION.(attached to original only)...Appendix "A"

APPELLANT'S BRIEF.......(attached to original only)...Appendix "B"

iii.

INDEX OF AUTHORITIES

Brown v. State,716 S.W.2d 939,944
(Tex.Crim.App.1986)........................................................pg.4,5

Burks v. United States, 437 U.S.1,18,98 S.Ct.2141, 57 L.Ed.2d 1
(1978) ........................................................pg.8,14

Clayton v. State,235 S.W.3d 772,778
(Tex.Crim.App.2007) ........................................................pg.7

Geesa v. State,820 S.W.2d 154,162
(Tex.Crim.App.1991)........................................................pg.9

Goff v. State,931 S.W.2d 537,550
(Tex.Crim.App.1996) ........................................................pg.4,5,10

Guevara v. State, 152 S.W.3d 45,49-52
(Tex.Crim.App.2004)........................................................pg.7

Hooper v. State,214 S.W.3d 9,15-16
(Tex.Crim.App.2007).........................................................pg.4,7,11

Jackson v. Virginia,443 U.S.307,318-19,S.Ct.2781,2788-89,
61 L.Ed.2d 560 (1979)........................................................pg.7,14

King v. State,29 S.W.3d 556,564-65
(Tex.Crim.App.2000)........................................................pg.7

Langs v. State,183 S.W.3d 680,686
(Tex.Crim.App.2006)........................................................pg.8

Moreno v. State,755 S.W.2d 866,867
(Tex.Crim.App.1988)........................................................pg.6,9

Paulson v. State,28 S.W.3d 570
(Tex.Crim.App.2000)........................................................ pg.9

Rodriguez v. State,96 S.W.3d 398,400-01
(Tex.Crim.App.2002) ........................................................ pg.9

Taylor v. State,332 S.W.3d 485,486
(Tex.Crim.App.2011) ........................................................ pg.6

Threadgill v. State,146 S.W.3d 654,665
(Tex.Crim.App.2004)........................................................pg.4,8

Tovar v. State,165 S.W.3d 785
(Tex.App. — San Antonio 2005) ........................................................pg.8,14

Williams v. State,235 S.W.3d 742,750
(Tex.Crim.App.2007) ............................................. pg.7
In re Winship,297 U.S.358,377,25 L.Ed.2d 368,377, 90 S.Ct.1068,
51 Ohio Op.2d 323 (1970)......................................... pg.9

RULES / STATUTES

Texas Code of Criminal Procedure Art.36.13.......................pg.5

NO. PD-0989-15

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

---

ARTURO SANCHEZ ALMAGUER, PRO SE

Petitioner/Appellant

VS.

THE STATE OF TEXAS

Respondent/Appellee

---

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

Petitioner/Appellant respectfully submits this Petition for Discretionary Review and moves that this Honorable Court grant review of this cause and offers the following in support thereof:

## STATEMENT REGARDING ORAL ARGUMENT

The Petitioner/Appellant DOES NOT request an oral argument in this case because he believes the facts raised can be discerned without further explanation or assistance.

1.

## STATEMENT OF CASE

This is a capital murder case with a mandatory life sentence. In 1988, Wilda and Evan Squires were found murdered in their home. In 2011, some 23 years later, Almaguer was introduced as a suspect based on DNA taken from forensic samples of feces precerved from the time of the murders. No other evidence linked Almaguer to the crime. The State built a circumstantial case regarding the fecal matter by unsupported speculation. This case revolves entirely around the rationality of the inferences about the fecal matter.

## STATEMENT OF PROCEDURAL HISTORY

In Cause Number CR-1214-12-D Almaguer was charged with Capital Murder in the course of burglary by theft. The jury found Almaguer guilty and the Life Sentence was imposed based on the guilty verdict. The conviction was appealed. On the 25th day of June, 2015, in an unpublished opinion, the Thirteenth Court of Appeals Affirmed the judgement of the trial court. A Motion for rehearing was filed and subsequently denied on the 24th of July, 2015. This Petition for Discretionary Review was timely forwarded to the Court of Criminal Appeals for filing pursuant to Rule 9.2(b), Texas Rules of Appellate Procedure.

## GROUND FOR REVIEW

### I.

PETITIONER ASSERTS THAT THE COURT OF APPEALS ERRED IN CONCLUDING THAT THE EVIDENCE WAS LEGALLY SUFFICIENT BEYOND A REASONABLE DOUBT TO SUPPORT A CAPITAL MUDER CONVICTION.

A) The Court of Appeals erred in considering evidence under the "parties theory" without a lawful jury charge on the elements of criminal responsibility. This is contrary to this Court's rulings in: <u>Goff v. State,</u>931 S.W.2d 537,544 (1996); and <u>Brown v. State,</u>716 S.W.2d 939,944 (1986). [see COA, Mem.Op.,pgs.6-7,sec.3 "Party to the Offense."; and Appellant's Brief pgs.19-27]

B) The Court of Appeals erred by not distinguishing whether the jury verdict was based on reasonable inference supported by evidence, or speculation, in determining that Almaguer "was the shooter" and therefore possessed the requisite intent to kill. This is contrary to this Court's rulings in <u>Hooper v. State,</u> 214 S.W.3d 9,13 (2007); and <u>Threadgill v. State,</u>146 S.W.3d 654,665 (2004).[see COA, Mem.Op.,pg.6,sec.2 "Murder"; and Appellant's Brief pg.12,14-15]

### II.

WITH CONSIDERATION OF PREVIOUS ATTEMPTS TO DEFINE AND APPLY THE PROOF BEYOND A REASONABLE DOUBT STANDARD, PETITIONER RESPECTFULLY AND HUMBLY SETS FORTH THREE PROPOSITIONS TO PERSUADE THIS HONORABLE COURT TO "SET NEW PRECEDENT."

A) Beyond a Reasonable Doubt can be clearly defined and applied.

B) Beyond a Reasonable Doubt is a "legal formula" which creates a threshhold of proof and narrows the theories from which inferences may be drawn.

C) As a "formula" Beyond a Reasonable Doubt can be applied to "test" the evidence, by a jury or in an appellate court sufficiency of evidence review.

## GROUND ONE ARGUMENT

Petitioner asserts that the Court of Appeals erred because there is no "rational inference" supported by evidence that proves "beyond a reasonable doubt" that Almaguer, acting as principal, possessed the requisite intent to murder, with the objective of committing or attempting to commit burglary by theft.

### A). "Parties of Offense."

The Court of Appeals, and jury, erroneously considered evidence under the "parties theory." The jury DID NOT recieve the ,aw on parties charge from court. Texas Code of Criminal Procedure Art.36.13 states "the jury is the exclusive judge of facts, but is bound to recieve the law from the court and be governed thereby." "The test for ascertaining whether a person is a party to an offense by virtue of his own conduct or by conduct of another for which he is criminally responsible [is]: 'the trial court should first remove from consideration the acts and conduct of the nondefendant actor. Then, if the evidence of the conduct of the defendant then on trial would be sufficient, in and of itself, to sustain the conviction, no submission of the law of principals is required...On the other hand, if the evidence introduced upon trial of the cause shows, or raises an issue, that the conduct of the defendant then upon trial is not sufficient, in and of itself, to sustain a conviction, the State's case rests upon the law of principals and is dependant, at least in part, upon the conduct of another. In such a case, the law of principals must be submitted and made applicable to the case." see Brown v. State,716 S.W.2d 939,944 (Tex.Crim.App. 1986). "Under the law of parties, the State is able to enlarge a defendant's criminal responsibility to acts in which he may not be the principal actor... Where there is no charge on the law of parties a defendant may only be convicted on the basis of his own conduct." see Goff v. State,931 S.W.2d 537,544 (Tex. Crim.App.1996).

5.

"The judge's duty to instruct the jury on the law applicable to the case exists even when defense counsel fails to object to inclusions or exclusions in the charge; this may require the judge to sua sponte provide the jury with the law applicable to the case." see Taylor v. State,332 S.W.3d 483,486 (Tex. Crim.App.2011).

There is no question that the "parties theory" played a significant role in how the Court of Appeals, as well as the jury, reached conclusions regarding whether the evidence supported a finding of guilt as principal or accomplice. The jury during deliberations at guilt/innocence, requested the Court to clarify the law of parties. And it is clear that the Court of Appeals used the law of parties to determine sufficiency.

In this case the parties theory was introduced during voir dire to influence the inferences to be drawn from the evidence. The state vacillated between Almaguer being the principal and accomplice to overcome the obvious lack of evidence and did abuse the law cf parties. The only evidence linking Almaguer to the crime was DNA obtained from fecal matter, which was not in the immediate vicinity of the murders. All inferences beyond a finding that the fecal matter could reasonably be linked to Almaguer are purely unsupported speculation. There is no direct or circumstantial evidence to support any speculations "created" to make a finding of guilt.

### B)."Reasonable Inference or Speculation?"

The Court of Appeals failed to distinguish between reasonable inference supported by evidence and speculation, in determining whether there was rational proof beyond a reasonable doubt, that Almaguer intentionally murdered the victims of this offense. " The role of a reviewing Court is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of essential elements of the offense charged beyond a reasonable doubt." see Moreno v. State, 755 S.W.2d 866,867 (Tex.Crim.App.1988).

The Court of Criminal Appeals has affirmed murder convictions based soley on inferences raised by circumstantial evidence. see e.g. Clayton v. State,235 3d 772,778-782 (Tex.Crim.App.2007); Guevara v. State,152 S.W.3d 45,49-52 (Tex.Crim. 2004; King v.State,29 S.W.3d 556,564-65 (Tex.Crim.App.2000). An inference is a conclusion reached by considering other facts and deducing a logical consequence from them. see Hooper v. State,214 S.W.3d 9,15-16 (Tex.Crim.App.2007). Specu-lation is mere theorizing or guessing about the possible meaning of facts and evidence presented. Id. A conclusion reached by speculation may not be completely unreasonable , but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. Id. Each fact need not point directly and independantly to the guilt of the appellant as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction. Id.at 13.

Petitioner asserts that the fecal matter from which a DNA test that could not exclude Almaguer, is circumstantial evidence, and the ONLY evidence from which all inferences were drawn. Any inferences beyond a link between Almaguer and the fecal matter is purely speculation. The state created an "imagery association" between a bowel movement and the bathroom, to lead the jury to an unreasonable inference that Almaguer was "in the bathroom" which was logically shown to be the location of the shooter. It is irrational and illogical to use this imagery association to infer that the person who deposited the fecal matter, is the same person who was in the bathroom shooting the victims. Nor can it be rationally inferred that Almagaguer was criminally responsible for the actions of the person in the bathroom based on fecal matter alone.

"The reviewing Court is required to ensure that the evidence presented actually supports a conclusion that the defendant commited the criminal offense of which he is accused."see Williams v. State, 235 S.W.3d 742,750(Tex.Crim.App.2007); (citing Jackson v. Virginia, 443 U.S.307,318-19, 99 S.Ct.2781,2788-89, 61 L.Ed. 2d 560 (1979).

Additionally, "the element distinguishing capital murder from felony murder is the "intent to kill". Felony murder is an unintentional murder committed in the course of committing a felony while capital murder includes a intentional murder committed in the course of robbery [burglary] see Threadgill v. State,146 S.W. 3d 654,665 (Tex.Crim.App.2004). [instant case emphasis]

The underlying offense in this case is burglary. Burglary itself has an underlying element. see Langs v. State,183 S.W.3d 680,686 (Tex.Crim.App.2006). In the instant case, the state alluded to "theft" as the underlying offense of the burglary. To follow the logic of establishing the requisite "intent to kill", it would require the state to prove that Almaguer had the intent to kill as the primary means of obtaing property from the residence. To support a capital murder conviction, the murder would have to take place prior to, or simulataneously with, the entering of the residence or the theft. If, the murder took place "after" the initiation of the burglary or theft, it is at best a felony murder. The sequence of events is the deciding factor between a felony murder and a capital murder. There is no evidence to make this determination in the instant case.

Accordingly, Petitioner moves this Honorable Court to reverse the Court of Appeals judgement affirming the conviction, and enter a judgement of aquittal based on the finding that the evidence is legally insufficient to support a capital murder conviction. see Burks v. United States,437 U.S.1,18, 98 S.Ct. 2141,57 L.Ed.2d 1 (1978). Holding, if the record evidence is legally insufficient under the Jackson rule, the reviewing Court must render a judgement of aquittal. see also Tovar v. State, 165 S.W.3d 785 (Tex.App.— San Antonio 2005).

## GROUND TWO ARGUMENT

Petitioner asserts that the "Beyond a Reasonable Doubt Standard" is not limited to a jury instruction at trial, but is a standard to be applied by an Appellate Court to test evidence in a sufficiency review.

The Texas Legislature has not defined the term "reasonable doubt" and it was not until 1991 that the Court of Criminal Appeals adopted a definition of the term. see Geesa v. State, 820 S.W.2d 154,162 (Tex.Crim.App.1991). Geesa's definition has now been overruled by Paulson v. State, 28 S.W.3d 570 (Tex.Crim. App. 2000). "Despite its early use in American jurisprudence, the phrase 'reasonable doubt' appears in neither our federal or state constitutions." see Paulson v. State, 991 S.W.2d 907,911 (Tex.App.—[14th Dist.] 1999), rev'd on other grounds, Paulson 28 S.W.3d 570; see also In re Winship, 297 U.S.358,377 25 L.Ed.2d 368,377, 90 S.Ct.1068, 51 Ohio Op.2d 323 (1970) (Black J. dissenting). We know, of course, that the due process clause of the Fourteenth Amendment to the United States Constitution protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. Winship, 297 U.S.at 364. Although the "beyond a reasonable doubt" standard is a requirement of due process, the federal constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Victor v. Nebraska, 511 U.S. 1,5, 127 L.Ed.2d 583, 114 S.Ct.1239 (1994). Moreover, the United States Constitution does not require that any particular form of words be used in advising the jury of the prosecutor's burden of proof. see (citing Rodriguez v. State, 96 S.W.3d 398,400-01 (Tex.App.—Austin[3rd Dist.] 2002). "The role of the reviewing Court is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense [beyond a reasonable doubt]" see Moreno v. State, 755 S.W.2d 866,867 (Tex.Crim.App.1988) [emphasis added by petitioner].

9.

Petitioner proposes that the foundational purpose of the beyond a reasonable doubt standard, is to give great weight to the presumption of innocence and firmly attach a "heavy burden of proof" on the state. If we view the standard of proof as a "formula" used to find a solution to a specific type of legal problem— we can then find a plausible definition and application of the proof beyond a reasonable doubt standard at trail, or on appeal.

This Court has recognized that individual jurors may require different levels of "proof" in order to be convinced beyond a reasonable doubt. see Goff v. State, 931 S.W.2d 537,550 (1996) . Simply put, "proof" must be decided by the jury, and "beyond a reasonable doubt" must be decided by rule of law.

The term "beyond" is a transcendental legal term used in law, just like "pi" in mathmatics. Pi is a constant number without definition. You cannot define pi, but anyone can "apply it" to find a specific solution. And so it is with the term "beyond". You cannot define it, but anyone can apply it as part of an equation to find a solution to the problem of reasonable doubt.

The beyond a reasonable doubt standard is applied to any case involving circumstantial evidence, which requires the jury to reach a verdict by drawing inferrences from theory and evidence. Since the burden is on the State, each element must be proved from the "same line of reasonaing." The inferrences relied upon to prove the elements of the offense, must connect to a"single" theory inferred from the evidence. Elements proved through 'multiple theories,' would not meet the burden of proof. Each element must "track" the relied upon theory, and interconnect with all other elements to be considered proved beyond a reasonable doubt. Evidence submitted to support a theory, "must" be directly and unquestionably connected to the events and circumstances of the charged offense. Evidence by theory alone does not meet the burden of proof.

10.

## PROPOSED DEFINITIONS

<u>Circumstantial Evidence</u>: evidence that tends to prove a factual matter based on inference drawn from theory of events and circumstances.

<u>Proof</u>: parsuasion that a fact exists.

<u>Beyond</u>: a transcendental term that limits.

<u>Doubt</u>: question of proof based on "direct" evidence; resolved by jury.

<u>Reasonable Doubt</u>: a legal question of proof based on "circumstantial" evidence, created when there is "more than one" equally compelling theory from which a juror is to draw inferrences.

<u>Beyond a Reasonable Doubt</u>: a "legal formula" applied by rule of law to resolve matters of reasonable doubt. i.e. (reasonable doubt + presumption of innocence = aquittal).

<u>Proof Beyond a Reasonable Doubt</u>: a threshhold of proof from which no verdict may fall below, created by applying a legal formula as rule of law, which gives great weight to the presumption of innocence, and requires a verdict to rest on "one" theory from which the jury reasonably inferred guilt. The inferrences must be trackable to one theory regarding evidence relied upon to prove each element of offense beyond a reasonable doubt. Each element to be proved must be "traceable" to a proving factor with a direct and undisputable connection to the charged offense. Circumstantial evidence cannot exist on theory alone and must be directly lnked and corroborated by "real" evidence. see <u>Hooper v. State, 214 S.W.3d 9,13 (Tex.Crim.App.2007)</u>.

## HYPOTHETICAL JURY CHARGE

The State has the burden of proving each element of the offense charged beyond a reasonable doubt. This requires the State to narrow the evidence to a single theory from which you may draw inferrences in reaching your verdict.

You are hereby instructed that the case before you involves circumstantial evidence, requiring you to reach a verdict from inferrences drawn from the evidence presented. If, after careful and impartial consideration of all the evidence in this case, you are faced with reasonable doubt as defined in these instructions, regarding any element of this offense, you will apply the weight of the preumption of innocence, giving the defendant the benefit of the doubt, and enter your verdict as not guilty, by rule of law.

### PROPOSED FORMULA APPLIED TO INSTANT CASE

Petitioner relies on the instant case to demonstrate the ffectiveness of applying a "formula" to determine if the evidence supports a finding of guilt "beyond a reasonable doubt." The evidence in this case fails on at least two levels: 1) the inferrences were drawn from an uncorroborated theory that said Almaguer "was the shooter" based on fecal matter linked by DNA test. 2) The State presented "more than one theory" from which the jury was expected to draw inferrences in reaching a verdict. Specifically, that Almaguer was the principal "AND" accomplice. The state introduced the law of parties at voir dire but did not give a charge on "which" theory to follow in reaching a verdict. The Court of Appeals erroneously followed this UN-charged parties theory.

Step1 Question: Does the verdict rest substantially or entirely on circumstantial evidence? Answer: Yes, therefore inference becomes a factor to be considered.

Step 2 Question: Is the theory from which inferrences can be drawn, supported by evidence rationally and directly linked to the offense. Answer: No, the theory from which inferrences were drawn is puely speculation without support of any "real" evidence. Evidence fails to meet the burden of proof.

12.

Step 3 Question: Is there "more than one" equally compelling theory from which to draw inferrences? Answer: Yes, the State presented Almaguer as the primary actor and the accomplice. Evidence fails to move "beyond" reasonable doubt.

Step 4 Question: Is there a legal question of proof regarding reasonable doubt? Answer: Yes, the theory is unsupported; and there is "more than one" theory that is equally compelling from which to draw inferrences. Reasonable Doubt + Presumtion of Innocence = Aquittal. Evidence is legally insufficient to support a captial murder conviction with an underlying offense of burglary.

Petitioner has presented what he believes to be a strong proposition for the necessity of a lawful Reasonable Doubt "Formula" and Definition. The only burden put on the State by this formula is one that is reasonable and worthy of creating a "high' standard of proof. The State must establish a "single " theory from which a juror is to draw inferrences and each piece of evidence presented by the state to "lead" a juror to an inferrence "must" be directly linked to the events and circumstances of the offense charged. Extraneous evidence with only a theoretical connection does not meet the threshhold of proof "beyond" a reasonable doubt. This is especially important when the charged offense has multiple levels of elements to be proved. "Each" element must be proved in and of itself. The greater offense is not proved by the lesser offense in a capital murder offense.

Accordingly, Petitioner humbly shows this Honorable Court that the current precedent on the beyond a reasonable doubt standard is fundamentally flawed, and humbly and respectfully moves this Court to "Set New Precedent" to restore the weight of the presumption of innocence and re-establish the "heavy" burden of proof on the state in proving it's case.

Petitioner humbly asserts that the evidence is legally insufficient to support a finding "beyond a reasonable doubt" as proposed in this Petition for Discretionary Review. Based on the application of the propsed "formula" Petitioner moves this Court to reverse the Court of Appeals judgement affirming the conviction, and enter a judgement of aquittal based on the finding that the evidence is legally insufficient to support a conviction. <u>Burks v. United States</u>, <u>427 U.S. 1,18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)</u> . Holding, if the record evidence is legally insufficient under the <u>Jackson</u> rule, the reviewing Court must render a judgement of aquittal. see also <u>Tovar v. State, 165 S.W.3d 785</u> (Tex.App—San Antonio 2005).

## PRAYER FOR RELIEF

For the reasons stated herein, it is respectfully submitted that the Court of Criminal Appeals of Texas should GRANT this Petition for Discretionary Review.

Respectfully submitted,

on this 19 day of August ,2015

_Arturo Almaguer Sanchez_

By: Arturo Sanchez Almaguer #1918635,pro se
3001 S. Emily Dr.
Beeville, TX 78102

14.

## CERTIFICATE OF SERVICE

The undersigned pro se Appellant/Petitioner hereby certifies that a true and correct carboncopy [without a copy of the Memorandum Opinion] of the foregoing Petition for Discretionary Review has been mailed, U.S. mail, postage prepaid, to the District Attorney, Appellate Division, Ted Hake, 100 Closner, Edinburg, Texas 78539, and the State Prosecuting Attorney, P.O. Box 12405, Austin, Texas 78711, on this _____19_____ day of August ,2015.

Arturo Almaguer Sanchez
Arturo Sanchez Almaguer

15.

## CERTIFICATE OF SERVICE

I hereby certify that a carbon copy of the foregoing motion to suspend Rule 9.3 T.R.A.P. has been forwarded to the following parties by U.S.Mail postage prepaid through the McConnell Unit mailroom. District Attorney, Ted Hake, Appellate Division, 100 Closner, Edinburg, Texas 78539, and the State Prosecuting Attorney, P.O. Box 12405, Austin, Texas 78711, On this __19__ day of _____ __August__ ,2015.

_Arturo Almaguer Sanchez_
Arturo Sanchez Almaguer

COURT OF APPEALS MEMORANDUM OPINION

APPENDIX "A"



# NUMBER 13-14-00312-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ARTURO SANCHEZ ALMAGUER,                                    **Appellant,**

v.

THE STATE OF TEXAS,                                           **Appellee.**

### On appeal from the 206th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Longoria
### Memorandum Opinion by Justice Longoria

Appellant, Arturo Sanchez Almaguer, was convicted by a jury on two counts of capital murder and sentenced to life imprisonment. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West, Westlaw through Chapter 46 2015 R.S.). Appellant challenges his conviction by two consolidated issues. We affirm.



# I.   BACKGROUND

On November 12, 1988, Officer Roberto Moreno of the Weslaco Police Department responded to a report of shots fired at the Magic Valley Trailer Park in Weslaco, Texas. Upon his arrival, residents of the trailer park directed him to the Squires home. Inside the trailer, he discovered a male and a female body on the floor. Officer Moreno identified the bodies as those of Evan and Wilda Squires. Both appeared to have been shot and neither was responsive. Both died as a result of the gunshot wounds. Officer Moreno and other investigators who were called to the scene observed a pile of human feces on the carpet in one of the rooms, as well as a pair of jean shorts covered in feces. They also observed a box of silverware lying on the floor, a machete on a chair, and a radio that appeared to have been wrapped up. Officer Patsy Pemelton observed a trail of clothes leading from the side door of the trailer down to a drain ditch some distance away. At the end of the trail, she found a bag containing clothes as well as a torn shirt that was also covered in feces. Officer Pemelton took these items into evidence.

In 2005, the Texas Department of Public Safety ("DPS") DNA lab in McAllen, Texas, obtained partial DNA profiles from the fecal stains on both the torn shirt found at the end of the trail and the jean shorts found at the Squires' home. In 2012, the DPS DNA lab received a known DNA sample from appellant. The lab compared the DNA profiles from the shirt and jean shorts to appellant's DNA profile. DNA analyst Alejandro Madrigal testified that appellant could not be eliminated as a potential contributor to the DNA profiles found on the clothing. The State indicted appellant on three counts of capital murder. *See id.* A jury convicted appellant on all three counts of capital murder. The

2

State elected to dismiss Count 1 after receiving the verdict, and appellant was automatically sentenced to life imprisonment.[1]

## II. LEGALLY INSUFFICIENT EVIDENCE

By his first issue, appellant asserts that the evidence is legally insufficient to support a finding beyond a reasonable doubt that he intentionally caused the deaths of Evan and Wilda Squires.

### A. Standard of Review and the Applicable Law

The standard for reviewing the existence of legally sufficient evidence is whether any rational trier of fact could have found all the essential elements of the charged offense proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We view the evidence in the light most favorable to the verdict. *Id.* The jury serves as the exclusive judge of the facts, the credibility of the witnesses, and the weight given to the witnesses' testimony. *Williams v. State*, 226 S.W.3d 611, 615 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The jury may believe all, some, or none of the testimony presented. *Id.* In our review, we must uphold the jury's verdict unless it is irrational or if it is not supported by more than a mere modicum of evidence. *Gomez v. State*, 234 S.W.3d 696, 702 (Tex. App.—Amarillo 2007, no pet.). Every single fact presented does not have to point directly and independently to the defendant's guilt; it is sufficient if the conclusion is reasonable by the cumulative effect of all the incriminating circumstances. *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). The standard of review is the same for both direct and circumstantial evidence. *Frank v. State*, 265 S.W.3d 519, 521 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

---

[1] Appellant was also indicted for murdering more than one person during the same criminal transaction. *See* TEX. PENAL CODE ANN. § 19.03(a)(7)(A) (West, Westlaw through Chapter 46 2015 R.S.).

3

We measure the legal sufficiency of the evidence against the elements of the offense as defined by a hypothetically correct jury charge. *Curry v. State*, 975 S.W.2d 629 (Tex. Crim. App. 1998). A hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrain the State's theory of criminal responsibility, and adequately describes the particular offense for which the defendant was tried. *Triplett v. State*, 292 S.W.3d 205, 210 (Tex. App.—Amarillo 2009, pet. ref'd).

Here, the State was required to prove that appellant murdered the Squires in the course of committing or attempting to commit burglary. *See* TEX. PENAL CODE ANN. § 19.03(a)(2). A person commits murder if he "intentionally or knowingly causes the death of an individual." *See id.* A person commits burglary if: (1) without consent of the owner, (2) the person enters a habitation (3) with intent to commit a felony, theft, or assault. *See id.* § 30.02 (West, Westlaw through Chapter 46 2015 R.S.); *Gardner v. State*, 306 S.W.3d 274, 287 (Tex. Crim. App. 2009) (stating that appellant committed burglary when he entered the victim's home without her effective consent and committed murder).

## B. Discussion

Appellant argues that no evidence, circumstantial or otherwise, was presented to show that he caused the death of either Mr. or Mrs. Squires. Although DNA evidence was presented to show that appellant was at the crime scene, there was no evidence to show that he was present at the time of the murders. Even though appellant does not dispute that circumstantial evidence is sufficient to establish guilt, he contends that convictions cannot be upheld if based solely on speculation. Appellant argues that the only link to the offense was his DNA at the scene of the crime; that DNA alone is not

4

sufficient evidence to show he intentionally caused the death of the Squires; and that the DNA evidence is also insufficient to show that he was in the course of committing or attempting to commit a burglary.

## 1. Burglary

Here, the State was required to prove that appellant had entered the Squires' home without their consent to commit a felony. *See* TEX. PENAL CODE ANN. § 30.02. The jury heard evidence that the Squires appeared to have been awakened in the middle of the night and at a time they were usually already in bed. The evidence showed that appellant's DNA was discovered at the Squires' home in the form of feces on the carpet and on more than one article of clothing. An investigator testified that the feces appeared to be fresh because the odor strongly permeated the scene when he arrived a few minutes after the shots were fired. Furthermore, silverware and other valuables were found in what appeared to be odd places around the home and outside. A radio appeared to be wrapped up as if in preparation of being moved elsewhere and a machete had been placed on a chair. Appellant's DNA placed him inside the Squires' home and at the end of the trail of clothing outside the home. Therefore, the evidence could have permitted the jury to make a logical inference as to appellant's unlawful presence in the Squires' home that night as well as his attempt to commit a burglary. *See id.; Matamoros v. State*, 901 S.W.2d 470, 474 (Tex. Crim. App. 1995) (holding that the defendant committed burglary because the evidence was sufficient to establish that the victim was sleeping in his bed when the defendant entered the house without his victim's consent and the defendant surprised and killed him).

## 2. Murder

5

To prove the offense of capital murder, the State was required to show that appellant intentionally or knowingly shot the Squires and caused their deaths. *See id.* §19.03(a)(2). Appellant argues that no direct or circumstantial evidence was presented that could prove he intended to cause the death of either Squires. Appellant contends that the intent element for capital murder was not proven by the State because the State did not present any evidence that he harbored ill will towards them and the record contained no evidence of appellant's fingerprints at the crime scene or eye witnesses who could place him near the scene.

However, contrary to appellant's contention that the record is bereft of any evidence to infer that he possessed the requisite intent to commit murder, the evidence showed that the Squires were shot at a close range of between two and four feet. At such close proximity to the victims, the law presumes an intent to kill. *See Sholars v. State,* 312 S.W.3d 694, 703 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd.); *Childs v. State,* 21 S.W.3d 631, 635 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd.). Furthermore, the bullet that exited Mr. Squires' body was lodged into the wall opposite the bathroom, and Mr. Squires fell forward into the bathroom. Such placement of the bullet and his body indicates that the shooter was in the bathroom when he shot Mr. Squires. The jury could logically infer from this evidence and the presence of his feces elsewhere in the house that appellant was the shooter because he was unable to control his bowels that night and was in the bathroom when he shot Mr. Squires.

### 3. Party to the Offense

The evidence also indicates that multiple parties participated in the burglary. Under a hypothetically correct jury charge, the jury could convict appellant if it found that

6

he was present at the commission of the offense and he encouraged or aided another person in intentionally causing the death of the Squires. *See* TEX. PENAL CODE ANN. § 7.02(a)(2); *King v. State*, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000). In reviewing the sufficiency of the evidence to support appellant's participation as a party to the offense, we may consider evidence occurring before, during, and after the commission of the offense and may rely on his actions showing an understanding and common design to do the prohibited act. *Gross v. State*, 352 S.W.3d 238, 240 (Tex. App.—Houston [14th Dist.]), *aff'd*, 380 S.W.3d 181 (Tex. Crim. App. 2012).

Appellant argues that while the evidence shows that someone intentionally and knowingly caused the deaths of the Squires, the evidence does not prove that appellant was present at the time the murders were committed. However, there were two sets of footprints found in the Squires' home. Appellant's DNA establishes that he was there shortly before the first police officer arrived because the fecal matter was still fresh. As previously mentioned, his DNA was also found at the end of the trail leading from the Squires' home to a ditch some distance away. The pajamas found outside on the trail matched the pajamas of the victim left inside the home, further indicating a burglary was being committed. Finally, neither Mr. nor Mrs. Squires owned any firearms. The jury could reasonably infer from such evidence that appellant was present at the commission of the burglary and that he or his accomplice brought a firearm with them with the intent of murdering the inhabitants of the residence should they interfere with the burglary. *See Gardner*, 306 S.W.3d at 287. Thus, considering the evidence of the events that occurred during and after burglary, we conclude that the evidence presented was legally sufficient to support appellant's conviction. We overrule appellant's first issue.

## III. Motion for a New Trial

By his second, third, and fourth issues, appellant asserts that the trial court abused its discretion by denying his motion for a new trial because the court unconstitutionally applied Texas Rule of Evidence 606(b) and improperly excluded juror testimony. We review these issues together.

### A. Standard of Review and the Applicable Law

We review a trial court's denial of a motion for a new trial under an abuse of discretion standard, and we reverse only when the trial judge's opinion was so clearly erroneous as to lie outside the zone within which reasonable persons might disagree. *Freeman v. State*, 340 S.W.3d 717, 732 (Tex. Crim. App. 2011). If there is no such abuse of discretion, we are not justified in reversing the judgment. *Id.* We view the evidence in the light most favorable to the trial court's ruling. *Lopez v. State*, 428 S.W.3d 271, 278 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). We do not substitute our judgment for that of the trial court, but will uphold the ruling if it was within the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).

Texas Rule of Evidence 606(b) provides that, during an inquiry into the validity of a verdict or an indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, to the effect of anything on that juror's or another juror's vote, or any juror's mental processes concerning the verdict or indictment. TEX. R. EVID. 606(b). The court may not receive a juror's affidavit or evidence of a juror's statement on these matters. *Id.* However, a juror may testify under two exceptions: (1) as to whether any outside influence was improperly brought to bear on any juror; or (2) to rebut a claim that the juror was not qualified to serve. *Id.*

## B. Discussion[2]

Appellant argues that he is entitled to a new trial because of juror misconduct that occurred during voir dire proceedings and during jury deliberations at trial. He contends that during voir dire proceedings, the State introduced and explained the law of parties to the venire panel even though the law of parties was not authorized by the charge of the court. According to appellant, this constituted an "outside influence" that was improperly brought to bear on jurors under the first exception of Texas Rule of Evidence 606(b). Furthermore, appellant argues that, according to juror Maribel Martinez's affidavit, the jury found appellant guilty based on the law of parties and there was not enough evidence to convict him of murder as a principal. To support this contention, defense counsel introduced into evidence notes from the jurors asking for clarification on the law of parties. Appellant further asserts that the trial court abused its discretion in denying his motion for a new trial because he was not given the opportunity to develop the record on appeal and because Rule 606(b) was applied unconstitutionally.

The "outside influence" exception allows proof of external pressures that may affect the verdict, and it is limited to those situations that occur both outside of the jury room and outside of the jurors' personal knowledge and experience. See TEX. R. EVID. 606(b); Colyer v. State, 428 S.W. 3d 117, 124 (Tex. Crim. App. 2014). The State brought up the law of parties during voir dire, before the jury had even been selected. Maribel

---

[2] Appellant argues that Texas Rule of Evidence 606(b) is unconstitutional as applied to him. Appellant does not dispute that Texas Rule of Evidence 606(b) has been deemed constitutional by provisions of both the federal and state constitutions and he does not give a substantial reason as to why it should be held unconstitutional in his particular case. Appellant does not cite to any authority to support his contention that Rule 606(b) is unconstitutional as it pertains to his case. Under Texas Rule of Appellate Procedure 38.1, appellant must provide specific arguments and authorities that support his argument to effectively brief a constitutional issue. See TEX. R. APP. P. 38.1; Hicks v. State, 15 S.W. 3d 626, 630 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd.). Thus, because appellant has not complied with the briefing requirements of Rule 38.1, we hold that appellant has waived appellate review of his constitutionality issue.

9

Martinez had not yet been designated as a juror, and was merely a member of the venire panel. The information about party liability that she obtained from the State was acquired prior to being selected to serve on the jury. *See Tate v. State*, 414 S.W. 3d 260, 264 (Tex. App.—Houston [1st Dist.] 2013, not pet.) (stating that a jury's decision was not affected when a member of the venire panel acquired information relevant to the case prior to being selected to serve on the jury). Furthermore, information given to the venire members by the parties during voir dire is not an outside influence because it was part of normal court proceedings. *See Franks v. State*, 90 S.W.3d 771, 802 (Tex. App.—Fort Worth 2002, no pet.). Texas courts have considered factual or legal information conveyed to the jurors by an unauthorized individual who seeks to affect the deliberations as an "outside influence." *See Colyer*, 428 S.W. 3d at 125. Appellant does not allege that the State provided factual or legal information to the jury outside of the normal proceedings of the trial. Thus, the jury's consideration of the law of parties was not an "outside influence" improperly brought to bear against the jury. *See* Tex. R. Evid. 606(b); *see also Franks*, 90 S.W.3d at 802. The trial court did not abuse its discretion by denying appellant's motion for new trial. We overrule appellant's second issue.

### III. CONCLUSION

Under the facts of this case, we conclude that (1) the evidence was legally sufficient to uphold appellant's conviction; and (2) the trial court did not abuse its discretion by denying appellant's motion for a new trial.

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
25th day of June, 2015.

11

APPELLANT'S BRIEF ON APPEAL

APPENDIX "B"

13-14-00312-
THIRTEENTH COURT OF APF
CORPUS CHRISTI, TI
11/18/2014 3:37:39
DORIAN RAMI
CLI.

NO.   13-14-00312-CR

---

In the Thirteenth Court of Appeals
Edinburg, Texas

---

Arturo Sanchez Almaguer
Appellant

v.

State of Texas
Appellee

---

On Appeal from Cause Number CR-1214-12-D
206th Judicial District Court of Hidalgo County, Texas
Hon. Rose Guerra Reyna Presiding

---

APPELLANT'S BRIEF

---

NO ORAL ARGUMENT REQUESTED

O. RENE FLORES
State Bar Number 24012637
O. Rene Flores, P.C.
1308 S. 10th Avenue
Edinburg, Texas 78539
(956) 383-9090 Telephone
(956) 383-9050 Facsimile
Counsel for Appellant



## IDENTITY OF PARTIES AND COUNSEL

**Appellant**
Arturo Sanchez Almaguer

**Appellate Counsel**
Oscar Rene Flores
O. Rene Flores, P.C.
1308 S. 10th Avenue
Edinburg, Texas 78539

**Trial Counsel**
Rogelio Garza
310 W. University Dr.
Edinburg, Texas 78539
(956) 316-1375

Pam Alexander
4009 S. Sugar Road
Edinburg, Texas 78539
(956) 397-2754

**Appellee**
State of Texas

**Trial Counsel**
Victoria Muniz
Hidalgo County DA's
Office
Asst. Criminal
District Attorney
100 N. Closner
Edinburg, Texas 78539

**Appellate Counsel**
Theodore "Ted" Hake
Hidalgo County DA's
Office
Appellate Division
100 N. Closner
Edinburg, Texas 78539

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL..................................................................i

TABLE OF CONTENTS................................................................................ii

INDEX OF AUTHORITIES.............................................................................iii

STATEMENT OF THE CASE............................................................................vi

STATEMENT REGARDING ORAL ARGUMENT................................................................vii

ISSUES PRESENTED................................................................................viii

Issue One..................................................................................viii,7

Issue Two..................................................................................viii,19

Issue Three................................................................................viii,19

Issue Four....................................................................................ix,20

STATEMENT OF FACTS...............................................................................1

SUMMARY OF THE ARGUMENT.........................................................................6

ARGUMENT.......................................................................................20

PRAYER.........................................................................................36

CERTIFICATE OF SERVICE.........................................................................39

CERTIFICATE OF COMPLIANCE......................................................................39

# INDEX OF AUTHORITIES

## Cases

*Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1, (1978)..................................................................19

*Charles v. State,* 146 S.W.3d 204, 210 (Tex.Crim.App.2004)..................................................................22

*Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App.2007)..................................................................9

*Davis v. State,* 177 S.W.3d 355, 358 (Tex.App.-Houston [1st Dist.] 2005, no pet.)..................................................................10

*Guevara v. State,* 152 S.W.3d 45, 49-52 (Tex.Crim.App.2004)..................................................................12

*Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App.2007)..................................................................12

*Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979)..................................................................8,19

*Jaggers v. State,* 125 S.W.3d 661, 672 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd)..................................................................10

*Jones v. State,* 815 S.W.2d 667, 669 (Tex.Crim.App.1991)..................................................................27

*King v. State,* 29 S.W.3d 556, 564-65 (Tex.Crim.App.2000)..................................................................12

*Losada v. State,* 721 S.W.2d 305, 309 (Tex.Crim.App.1986))..................................................................10

*Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988)..................................................................9

*Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981) ............................................................................10

*Riley v. State*, 378 S.W.3d 453, 457 (Tex.Crim.App.2012) ............................................................................21

*State v. Herndon*, 215 S.W.3d 901, 905 n. 5 (Tex.Crim.App.2007)) ............................................................................22

*Tibbs v. Florida*, 457 U.S. 31, 41-42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982) ............................................................9

*Tovar v State*, 165 S.W.3d 785 (Tex. App. San Antonio 2005) ............................................................................19

*Walker v. State*, 823 S.W.2d 247, 248 (Tex.Crim.App.1991) ............................................................................27

*Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App.2007) ............................................................................8

*Wyatt v. State*, 23 S.W.3d 18, 30 (Tex.Crim.App.2000)...10

**Rules/Statutes**

Texas Rule of Appellate Procedure Rule 21.3...................21,28

Texas Rule of Appellate Procedure Rule 21.3(g) ............................................................................31,35,36,37

Texas Rule of Appellate Procedure  Rule 21.8(b)..................22

Tex.R. Civ. P. 166a(c) ............................................................22

Tex.R. Evid. 606(b) ............................................................27,33,36

**Constitution**

Article I, section 15, of the Texas Constitution.............19
Sixth Amendment of the United States Constitution..........19

TO THE HONRABLE JUSTICES OF THE THIRTEENTH COURT OF APPEALS:

Appellant, Arturo Sanchez Almaguer, files this brief requesting that the Court reverse and render a judgment of acquittal or alternatively remand for a new trial. Appellant Almaguer respectfully shows:

## STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case* | Appellant was indicted for three counts of capital murder. This is an appeal from convictions on Counts 2 and 3. The State Moved to Dismiss Count 1.[1] *See* TRAP 43; TEX. Penal. Code Ann. Section 19.02(b)(1)and (3); CR7-8; 132-137; 147 |
| *Course of Proceedings* | Appellant Almaguer pleaded "Not Guilty" and was tried by |

---

[1] Note that the jury convicted Appellant Almaguer of all three counts in the indictment. The State however elected to dismiss count one of the indictment after the verdict.

a jury. At the guilt-innocence phase of the trial, the jury returned verdicts of guilty as charged in the indictment in counts 1, 2 and 3 for the offense of Capital Murder. (CR7-8; 132-137) (RR17@55-56)

*Trial Court's Disposition* After having found Appellant guilty of Capital Murder the Court assessed punishment at LIFE imprisonment in the Institutional Division of the Texas Department of Criminal Justice. The trial court rendered judgment on the verdicts accordingly.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Almaguer is not requesting Oral Argument at this time.

vii

## ISSUES PRESENTED

### ISSUE NUMBER ONE

The evidence in this case is legally insufficient to support a finding beyond a reasonable doubt that Appellant Almaguer intentionally caused the death of Evan and/or Wilda Squires; the evidence in this case is legally insufficient to support a finding beyond a reasonable doubt that Appellant Almaguer was present at the time that the killings took place; the evidence in this case is legally insufficient to support a finding beyond a reasonable doubt that Appellant Almaguer is guilty of Capital Murder.

### ISSUE NUMBER TWO

The Trial Court Unconstitutionally Applied Rule 606(B) Of The Texas Rules Of Evidence, Resulting In A Violation Of Appellant Almaguer's Right To Trial By Jury As Mandated By Article I, Section 15, Of The Texas Constitution And Of His Right To A Fair And Impartial Jury As Provided By The Sixth Amendment Of The United States Constitution.

### ISSUE NUMBER THREE

The Trial Court Erred By Denying Appellant A Post-Conviction Inquiry Of Juror Maribel Martinez Regarding Whether The Jury Deliberated On The Law Of Parties In Reaching A Verdict Of GUILTY When The Jury Charge Did Not Authorize A Conviction Of Capital Murder As A Party. The Trial Court Reversibly Erred By Denying Appellant Almaguer To Develop The Record To Show That This Outside Influence Was Brought To Bear On The Jury During Deliberations.

## ISSUE NUMBER FOUR

The Trial Court Abused Its Discretion By Denying Appellant's Motion For New Trial.

## STATEMENT OF FACTS

### Responding Officer Roberto Moreno

At approximately 11:26 p.m. on November 13, 1988, Weslaco Police Officer Roberto Moreno responded to "shots fired" at the Magic Valley Trailer Park in Weslaco, Texas. RR15@19-22 Moreno was directed to the trailer belonging to the victims in this case by a stander-by, Eileen Myer, a resident of the trailer park. She and Mary Nestle gave Officer Moreno a description of the assailant and it was later given to the investigators in the case. RR15@30, 31, 48 Upon entry into the residence, Officer Moreno observed two bodies located in the hallway of the mobile home. He observed a male and a female - they had been shot. Moreno checked them for pulse; they were unresponsive. Moreno contacted EMS and called for investigators to be dispatched to the scene. RR15@22,23,50 While at the scene, Moreno observed what he believed to be "fecal matter" in one of the rooms.

1

## Investigator Bruce Kennedy

On November 13, 1988, Investigator Bruce Kennedy had been an investigator with Weslaco PD for about a year; this was his first homicide investigation. Although not on duty that night, he was called in late and told to bring his personal video recorder as the PD did not have one of its own. Kennedy made a video of the crime scene that night – he hasn't seen it since. RR15@55, 58-59,78-79, 81

While Kennedy walked through the crime scene that night, he observed what he believed was fecal matter and some denim shorts covering the fecal matter, both of which were collected as evidence. RR15@66-67, 92 Kennedy also testified that at the time of the investigation, there were two suspects, yet no information was gathered from the crime scene "linking" these suspects at that time. RR15@78 The investigation believed there were two suspects because two sets of footprints were observed leaving the scene. RR15@85, 90

2

**CSI Pat Pemelton**

This witness documented the scene in photographs. RR15@111-112 In one of the rooms, she described what she believed to be feces covered with denim shorts. RR15@140-142; State's Exhibit 62-66 Pemelton also testified describing the "trail of clothing" dropped outside the trailer and speculates that the person who dropped them must've been in a hurry to leave. RR15@146-147, 149-150 Ultimately Pemelton confirmed that no evidence as to *who* this clothing belonged to was recovered. RR15@182 Nor was a murder weapon recovered. RR15@179, 205

**Investigator Billy Pemelton**

Pemelton first became involved in this case in 2011, when appellant Almaguer first became a suspect. RR15@209, 212 He traveled to Michigan to obtain a warrant for the DNA sample of Appellant. RR15@213 This witness admitted that there was no other evidence other than the DNA profile that pointed to Appellant in this case. RR16@102 Pemelton further admitted "we

*don't know whether he killed them or not,"* when asked if he knew that Appellant committed these murders. RR16@128

**Dr. Norma Jean Farley**

Testified that gunshot wounds to the left chest of Evan Squires and a gunshot wound to the chest of Wilda Squires were determined to be the cause of death to the victims in this case. RR15@239-240

**William Lawrence Jury**

This is Wilda Squires' son. Evan Squires was her second husband. This witness described Evan Squires' son as having an estranged relationship with his father and Wilda. Although he believed this was a robbery gone badly, he admitted that nothing was missing from the trailer. RR16@7-13, 17

**Crime Lab Analyst Alex Madrigal**

This witness testified re: the forensic analysis of DNA and about the forensic samples which had been preserved from the time of the murder. There were samples submitted for analysis in this case.

4

Specifically, this witness identified samples of the clothing found and found that the DNA profile present on those items was consistent with the DNA profile of Appellant Almaguer. RR16@29-30, 35-36, 67

Madrigal testified that he had no DNA evidence to show that Appellant Almaguer committed these murders. In fact, Madrigal testified that he could not say that the DNA on these items belongs to Appellant Almaguer. RR16@51, 58

**Lieutenant Robert Vallejo**

Testified that he'd had a conversation with a man by the name of Paul Boychuck. After the murders, Boychuck went and told Vallejo that three days prior to the murders, Wilda Squires had shared with him she feared for her life; that she and her husband had been threatened; that she and her husband had been given "until Sunday" to change the will giving him half the money. The person making the threats was never identified but Evan Squires' son was the only one

5

identified as having an estranged relationship with his parents. RR16@156-159, 161

## SUMMARY OF THE ARGUMENT

Appellant argues that the evidence is legally insufficient to support his conviction because there was no evidence presented that Appellant caused or even intended to cause the death of either of these victims. Further, although there was DNA evidence presented to show that Appellant's DNA profile was at the crime scene, there was no evidence to show when it was that Appellant was there. Even the investigators in this case admitted they did not know whether or not Appellant committed this crime. Nor could forensic investigators testify *when* Appellant's DNA profile was deposited at the scene. Appellant avers that these facts conclusively establish a reasonable doubt as to whether appellant in fact did commit the offense of which he was convicted.

Texas Rule of Evidence 606(b) was unconstitutionally applied in this case when the trial

6

court denied Appellant Almaguer a post-conviction inquiry in order to develop the record to show Juror misconduct as contemplated by Tex. Rule of Appellate Procedure 21.8(g). In so doing, the Trial Court failed to recognize and admit evidence that the jury in this case reached a verdict based on the Law of Parties, which they were unauthorized to do since the charge of the court did not instruct the jury on the law of parties. Appellant Almaguer therefore, avers that the trial court abused it's discretion in denying Appellant's Almaguer Motion for New Trial.

## ISSUE NUMBER ONE

The Evidence In This Case Is Legally Insufficient To Support A Finding Beyond A Reasonable Doubt That Appellant Almaguer Intentionally Caused The Death Of Evan And/Or Wilda Squires; The Evidence In This Case Is Legally Insufficient To Support A Finding Beyond A Reasonable Doubt That Appellant Almaguer Was Present At The Time That The Killings Took Place; The Evidence In This Case Is Legally Insufficient To Support A Finding Beyond A Reasonable Doubt That Appellant Almaguer Is Guilty Of Capital Murder.

Appellant argues that the evidence is legally insufficient to support his conviction because there

7

was no evidence presented that Appellant intended to cause the death of either of these victims. Further, although there was DNA evidence presented to show that Appellant was at the crime scene, there was no evidence to show when it was that Appellant was there. Even the investigators in this case admitted they did not know whether or not Appellant committed this crime. Nor could forensic investigators testify when Appellant's DNA was deposited at the scene. Appellant avers that these facts "conclusively establish a reasonable doubt as to whether [appellant] in fact did commit the offense of which he was convicted."

The legal sufficiency of the evidence should be reviewed by considering all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Williams v. State,* 235 S.W.3d 742, 750 (Tex.Crim.App.2007) (*citing Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d

8

560 (1979)). Evidence is legally insufficient when the "only proper verdict" is acquittal. *Tibbs v. Florida*, 457 U.S. 31, 41-42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982). The role of a reviewing Court is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense charged beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). In doing so, deference is to be given to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Id.* The reviewing Court should defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. *See Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App.2007). But the reviewing court is required to ensure that the evidence presented actually supports a conclusion that the defendant committed the criminal offense of which he is accused. *See Williams,* 235 S.W.3d at 750.

Jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given the witness's testimony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981); *Jaggers v. State,* 125 S.W.3d 661, 672 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). And, they may choose to believe or disbelieve any part of a witness's testimony. *See Davis v. State,* 177 S.W.3d 355, 358 (Tex.App.-Houston [1st Dist.] 2005, no pet.). Likewise, "reconciliation of conflicts in the evidence is within the exclusive province of the jury." *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex.Crim.App.2000) (quoting *Losada v. State,* 721 S.W.2d 305, 309 (Tex.Crim.App.1986)).

Ordinarily, to sustain a conviction for capital murder as charged in this indictment, the evidence must demonstrate that: 1) the accused intentionally or knowingly caused the death of an individual and that the accused was then and there in the course of committing or attempting to commit the offense of burglary of a habitation; and further that the victims

10

were the owners of said habitation. Tex. Penal Code §§ 19.02(b)(1), 19.03(a)(2). Testimony from the several witnesses presented in this case showed the only evidence linking Appellant to this crime was a "DNA profile" "*consistent*" with Appellant's DNA profile. Note that Alex Madrigal from the crime lab testified that he could not say that the DNA submitted in this case even belonged to Appellant. RR16@58. DNA is durable; it does not evaporate or dissipate, and the time at which it was deposited on a surface cannot be directly determined. Evidence of a DNA profile consistent with Appellant, without more, could not have led a rational person to believe beyond a reasonable doubt that Appellant caused the death of these victims or that Appellant was in the course of committing or attempting to commit the burglary alleged here.

What about circumstantially? Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.

11

*Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App.2007). The Court of Criminal Appeals has affirmed murder convictions based solely on inferences raised by circumstantial evidence. *See, e.g., Clayton*, 235 S.W.3d at 778-82; *Guevara v. State*, 152 S.W.3d 45, 49-52 (Tex.Crim.App.2004); *King v. State*, 29 S.W.3d 556, 564-65 (Tex.Crim.App.2000). An inference is a conclusion reached by considering other facts and deducing a logical consequence from them. *Hooper*, 214 S.W.3d at 16. *Speculation* is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id.* A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. *Id.* Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction. *Id.* at 13.

In this case, it was undisputed at trial that Wilda and Evan Squires died as a result of gunshot wounds; that sometime after 11:00 p.m. on November 13, 1988, each was shot in the chest. State's witness Roberto Moreno testified that he responded to the scene at 11:26 p.m; that he arrived and observed two bodies located in the hallway, unresponsive; that these bodies had been shot. RR15@22-23 Dr. Norma Jean Farley testified that the cause of death of both victims was gunshot wounds to the chest. RR15@239-240 This evidence inarguably supports a finding that *someone* intentionally and knowingly caused the Squires' death and that the deaths were the result of having been shot with a firearm. Appellant argues that in examining the record to determine whether the evidence, viewed in the light most favorable to the verdict, is legally sufficient to support a finding that appellant was responsible, *there is insufficient evidence to sustain this conviction.*

13

There was no evidence upon which a rational trier of fact could have relied in finding beyond a reasonable doubt that Appellant Almaguer was present at the crime scene *at the time that the murders were committed.* Nor was there any circumstantial evidence from which a rational trier of fact could have drawn an inference that Appellant Almaguer was present at the crime scene *at the time that the murders were committed.*

There was no evidence upon which a rational trier of fact could have relied in finding beyond a reasonable doubt that Appellant Almaguer fired a weapon on the night of November 13, 1988. Nor was there any circumstantial evidence from which a rational trier of fact could have drawn an inference that Appellant Almaguer fired a weapon on the night of November 13, 1988. Pat Pemelton testified that there was no weapon recovered in this case. Nor was there any forensic analysis/evidence presented regarding the bullet fragments found that affirmatively linked Appellant to

14

the weapon used in this case. Nor was there any ballistic evidence upon which the jury could have relied in drawing an inference that Appellant was linked to the weapon used to commit these murders. RR15@205

There was no evidence upon which a rational trier of fact could have relied in finding beyond a reasonable doubt that Appellant Almaguer intended to cause the death of Evan and/or Wilda Squires on the evening of November 13, 1988 or that Appellant Almaguer even harbored any ill-will toward either of them. Nor was there any circumstantial evidence from which a rational trier of fact could have drawn an inference that Appellant Almaguer intended to cause the death of Evan and/or Wilda Squires on the evening of November 13, 1988 or that Appellant Almaguer even harbored any ill-will toward either of them. There was no evidence upon which a rational trier of fact could have relied in finding beyond a reasonable doubt that Appellant Almaguer intended to burglarize and/or rob either of

the victims that night. Nor was there any circumstantial evidence from which a rational trier of fact could have drawn an inference that Appellant Almaguer intended to burglarize and/or rob either of the victims that night.

Simply, the *only* evidence purporting to link Appellant Almaguer to the crime scene was his "DNA Profile." Investigator Billy Pemelton admitted that the DNA was the only evidence they had linking Appellant to this crime. Even so, although he had a "belief that Appellant was responsible," neither he nor his investigators knew whether Appellant killed Wilda and Evan Squires or not. RR16@89, 102 128 Even assuming arguendo that the DNA profile was "consistent" with that of Appellant Almaguer, there was no evidence upon which a rational trier of fact could have relied in finding beyond a reasonable doubt that Appellant Almaguer was present at the time that the Squires were murdered. Nor was there any circumstantial evidence from which a rational trier of fact could have drawn an

inference that Appellant Almaguer was present at the crime scene *at the time that the murders were committed.* If, as will likely be argued by the State, Appellant's DNA profile is from a place where the defendant should not have been, the DNA, by itself, can confirm only that he was there at some time and cannot, by itself, prove conclusively that he was there at the time of the crime. What's more, the record on appeal is devoid of any evidence upon which the jury could have relied to even "*corroborate* the presence of Appellant at the crime scene during the time of the murder." For example, there were no fingerprints belonging to Appellant found at the crime scene; there were no eye-witness accounts placing Appellant Almaguer at or near the crime scene at the time of the murders. In fact, as Roberto Moreno testified, the two standers-by who directed him to the crime scene upon his arrival also provided him with a description of the assailant. While that description was shared with those associated with this investigation, no evidence was presented that

Appellant Almaguer fit the description given. RR15@30, 31, 48   There's no confession by Appellant inculpating himself in these murders; there was no murder weapon found that was linked to Appellant in any way. While DNA analysis is a powerful tool in determining guilt or innocence, usually there is other evidence that links the defendant to the offense. We must remember that DNA analysis is performed by humans and is not foolproof, nor are the conclusions drawn from the analysis always correct.   State's witness and "expert" on DNA analysis Alex Madrigal not only admitted during his testimony that some DNA labs have been shut down for mistakes and that people have been known to be released for mistakes made regarding DNA testing but further acknowledged that he could not say that the DNA on the items submitted for testing *in this case* was that of defendant.   RR16@52,58 Only if all the prerequisites for reliability—*true match, correct source, and presence at the crime scene in the applicable time frame*—are satisfied can society have confidence that

the DNA evidence is, *in and of itself*, strong enough to support a conviction. Lastly, Alex Madrigal testified that he has no DNA evidence that Appellant committed these murders. RR16@51.

Accordingly, Appellant prays that the judgment be reversed, and a judgment of acquittal entered. *Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1, (1978) (holding if the record evidence is legally insufficient under the *Jackson* rule, the reviewing court must render a judgment of acquittal). *Tovar v. State*, 165 S.W.3d 785 (Tex. App. San Antonio 2005).

### ISSUE NUMBER TWO

The Trial Court Unconstitutionally Applied Rule 606(B) Of The Texas Rules Of Evidence, Resulting In A Violation Of Appellant Almaguer's Right To Trial By Jury As Mandated By Article I, Section 15, Of The Texas Constitution And Of His Right To A Fair And Impartial Jury As Provided By The Sixth Amendment Of The United States Constitution.

### ISSUE NUMBER THREE

The Trial Court Erred By Denying Appellant A Post-Conviction Inquiry Of Juror Maribel Martinez Regarding Whether The Jury Deliberated On The Law Of Parties In Reaching A Verdict Of GUILTY When The Jury Charge Did

19

Not Authorize A Conviction Of Capital Murder As A Party. The Trial Court Reversibly Erred By Denying Appellant Almaguer To Develop The Record To Show That This Outside Influence Was Brought To Bear On The Jury During Deliberations.

## ISSUE NUMBER FOUR

The Trial Court Abused Its Discretion By Denying Appellant's Motion For New Trial.

*Appellant respectfully asks the reviewing Court to consider Issues Number 2 through 4 together.*

## ARGUMENT AND AUTHORITIES

**Motion for New Trial: Standard of Review**

Appellant complains on appeal that his right to a fair trial was violated when the jury in this case reached a guilty verdict. Specifically, the jury charges in this case instructed the jury that they could convict if they were convinced beyond a reasonable doubt that Appellant Almaguer was guilty of Capital Murder as a primary actor. That is to say, the jury was *NOT* instructed on the Law of Parties. CR119, 126[1] Appellant however in his Motion for New Trial alleges that the Jury engaged in misconduct as

---

[1] Appellant refers the Court only to Counts Two and Three here, as Count One was dismissed.

contemplated by Texas Appellate Rule 21.3. Specifically, Appellant avers that the jury in fact relied on the Law of Parties in reaching its verdict of guilty on these respective counts. Said verdicts were not authorized by the Charge of the Court. Further, Appellant complains that the trial court erred by refusing to allow post-verdict inquiry in order to develop the record on appeal for review. CR172; RR20@18-21

Appellate courts review a trial court's denial of a motion for new trial under an abuse of discretion standard, reversing it only if it was clearly erroneous and arbitrary. *Riley v. State*, 378 S.W.3d 453, 457 (Tex.Crim.App.2012). The trial court's denial of the motion is arbitrary if no reasonable view of the evidence could support the ruling. *Id*. This standard requires that the appellate court review the evidence in the light most favorable to the trial court's ruling. *Id*. Appellate courts do not substitute their own views for those of the trial court; instead, an

21

appellate court must affirm the ruling of the trial court if it was within the zone of reasonable disagreement. _Id_. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." _Id_.

The same deferential review applies to historical facts. _Id_. The appellate court is free to disbelieve the statements in an affidavit, especially one unsupported by live testimony. _Id_. The Court of Criminal Appeals cited the Rules of Civil Procedure in holding that "affidavits from an interested party may establish a fact for summary-judgment purposes only if that evidence is 'clear, positive and direct, otherwise credible, and free from contradictions and inconsistencies, and could have been readily controverted.' " _Id_. (_quoting Charles v. State_, 146 S.W.3d 204, 210 (Tex.Crim.App.2004), _superseded in part on other grounds by_ Tex.R.App. P. 21.8(b), _as recognized in State v. Herndon_, 215 S.W.3d 901, 905 n. 5 (Tex.Crim.App.2007)); _see_ Tex.R. Civ. P. 166a(c). It

22

further held, "The phrase 'could have been readily controverted' means 'the testimony at issue is of a nature which can be effectively countered by opposing evidence.' " *Id*. By contrast, "[s]tatements in affidavits of interested witnesses concerning their own state of mind are 'uncontrovertible' because 'the mental workings of an individual's mind are matters about which adversaries have no knowledge or ready means of confirming or controverting.' " *Id*. The trial court has discretion to disregard statements in an affidavit that do not meet this test. *Id.; Charles*, 146 S.W.3d at 210.

**The Indictment**

Count Two of the indictment in this case alleged:

THE GRAND JURY, for the Count of Hidalgo, State of Texas, duly selected, empaneled, sworn, charged and organized as such at the January term A.D. 2012 of the 139th Judicial District Court for said County, upon their oaths present in and to said Court at said term that Arturo Sanchez Almaguer, hereinafter styled

23

Defendant, on or about the 13th day of November, A.D., 1988, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there intentionally cause the death of an individual, namely Evan Squires, by shooting him with a firearm, and the defendant was then and there in the course of committing or attempting to commit the offense of burglary of a habitation of Evan Squires, who was the owner of said habitation.

Count Three of the indictment in this case alleged:

THE GRAND JURY, for the Count of Hidalgo, State of Texas, duly selected, empaneled, sworn, charged and organized as such at the January term A.D. 2012 of the 139th Judicial District Court for said County, upon their oaths present in and to said Court at said term that Arturo Sanchez Almaguer, hereinafter styled Defendant, on or about the 13th day of November, A.D., 1988, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there intentionally cause the death of an individual, namely Wilda Squires,

24

by shooting her with a firearm, and the defendant was then and there in the course of committing or attempting to commit the offense of burglary of a habitation of Evan Squires, who was the owner of said habitation.   CR7-8

**The Jury Charges**

The application paragraphs of the court's charge to the jury in count two provided:

Now, if you find from the evidence beyond a reasonable doubt that on or about November 13, 1988, in Hidalgo County, Texas, the Defendant, Arturo Sanchez Almaguer did then and there intentionally cause the death of an individual, namely, Evan Squires, by shooting him with a firearm, and the defendant was then and there in the course of committing or attempting to commit the offense of burglary of a habitation of Evan Squires, then you will find the Defendant guilty of Capital Murder.

Unless you so find, from the evidence beyond a reasonable doubt that the Defendant is Guilty of Capital Murder, as defined herein, or if you have a reasonable doubt thereof, you will acquit the defendant of capital murder and say by your verdict, Not Guilty. CR121

The application paragraphs of the court's charge to the jury in count three provided:

Now, if you find from the evidence beyond a reasonable doubt that on or about November 13, 1988, in Hidalgo County, Texas, the Defendant, Arturo Sanchez Almaguer did then and there intentionally cause the death of an individual, namely, Wilda Squires, by shooting her with a firearm, and the defendant was then and there in the course of committing or attempting to commit the offense of burglary of a habitation of Wilda Squires, then you will find the Defendant Guilty of Capital Murder.

Unless you so find, from the evidence beyond a reasonable doubt that the Defendant is Guilty of Capital Murder, as defined herein, or if you have a reasonable doubt thereof, you will acquit the defendant of capital murder and say by your verdict, Not Guilty. CR128

In order for a jury to be authorized to convict a defendant as a party, the law of parties must be included in the application paragraph of the charge. *Walker v. State*, 823 S.W.2d 247, 248 (Tex.Crim.App.1991); *Jones v. State*, 815 S.W.2d 667, 669 (Tex.Crim.App.1991). The indictment in this case alleged appellant committed these offenses as a primary actor. Because the jury charge did not include an instruction on the law of parties, the jury was entitled to convict appellant only on the basis of his own conduct. *Walker*, 823 S.W.2d at 248.

**Texas Rule of Evidence 606(b)**

Texas Rules of Evidence 606(b) provides as follows:

27

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes. However, a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve. Tex.R. Evid. 606(b).

**Texas Rule of Appellate Procedure Rule 21.3**

Texas Rule of Appellate Procedure Rule 21.3 provides that a Defendant must be granted a new trial "when the jury has engaged in such misconduct

28

the defendant did not receive a fair and impartial trial." Tex.R.App. P. 21.3(g).

## Analysis

Appellant Almaguer insists that the trial court erred by overruling his motion for new trial because the jury engaged in jury misconduct resulting in the denial of a fair and impartial trial. In his motion for new trial, Appellant urged that the jury received "other evidence" that constituted an "outside influence" that was brought to bear in that the jury considered the application of the Law of Parties to his case, contrary to the jury instructions in the charges in counts two and three. Appellant Almaguer asserted in his motion and in an affidavit attached to the motion that jurors stated that there simply wasn't enough evidence to convict him as the one who actually did the killing. RR14@53-59

During voir dire proceedings, the State voir dire on the principles associated with the Law of Parties. The panel was given a bank robbery example involving

29

a shooter, a lookout and a getaway driver. During the discussion, the jury panel was educated on the principle of law known as the law of parties and further advised that although only the gunman in the example actually committed the hypothetical shooting, that all three are equally responsible for the shooting of the bank teller. RR14@53-59 Now, it is unclear whether the State requested a parties charge, since the record on appeal is silent with respect to a request for such a charge. At the close of the evidence, the parties agreed to exchange proposed charges and bring any specific requests to the Court if they could not agree. RR16@164-166 The next morning, the parties announced they had received copies of the proposed charges and neither party lodged any objections to the charges. RR17@4 What is clear is that no charge on the law of parties was incorporated into any of the Court's charges, Counts 1, 2 or 3. CR113, 119, 126.

The State objected to Appellant's affidavit in support of his motion for new trial. CR212 In the

30

affidavit, defense counsel discussed the deliberations of the jurors. CR176-178 Although Appellant attempted to present evidence to support his allegation of jury misconduct during deliberations, the trial court denied any post-conviction inquiry as such, thereby sustaining the State's objection couched in Texas Rule of Evidence 606(b). RR20@18-21

The Texas Supreme Court has found that Texas Rule 606(b) violated neither federal due-process principles nor the right to a fair trial under the Texas Constitution. And several Texas courts of appeals have upheld the Rule's constitutionality under provisions of both the United States and Texas constitutions. But Appellant urges this Court to review whether the rule was applied unconstitutionally in *this* case. Appellant contends that this application of Texas Rule of Evidence 606(b) was unconstitutional in this case and this unconstitutional application prevented Appellant from establishing the jury misconduct that, under Rule 21.3(g), mandates a new trial.

31

Finally, Appellant contends that his allegation of juror misconduct was further corroborated and substantiated by a jury question to the court during its deliberations in the guilt/innocence phase. The jury's question to the trial court was a request to clarify the Law of Parties. CR172-207; RR20@24; Defense Motion for New Trial Exhibit 7

The State will surely argue at this point that there is no "admissible" evidence of juror misconduct such that would show that the jury convicted Appellant Almaguer on any other principle other than what they were authorized to do. Therein lies the quandary and another complaint of Appellant Almaguer. Appellant recognizes Rule 606(b) of the Texas Rules of evidence provides that upon an inquiry into the validity of a jury's verdict a juror may not testify as to any matter or statement occurring during the jury's deliberations or to the effect of anything on any juror's mind or emotions or mental processes as influencing any juror's assent to or dissent from the jury's verdict. TEX. R.

EVID. 606(b). The rule further provides that a juror's affidavit concerning such matters would not be admitted into evidence for any of those purposes. *Id*. *However*, Appellant Almaguer also understands that the rule *does* provide that a juror may testify as to whether any outside influence was improperly brought to bear upon any juror. Tex.R. Evid. 606(b).

Appellant urges this Court to consider the discussion had during voir dire about the Law of Parties as an "outside influence" as contemplated by Texas Rule of Evidence 606(b) and Texas Rule of Appellate Procedure 21.3 RR14@53-59; Tex.R. Evid. 606(b). TRAP 21.3(g) ⟦At the hearing on the motion for new trial, defense counsel was prepared to rely on his affidavit and call a witness, Juror Maribel Martinez, to testify to the alleged misconduct. The State, anticipating that the appellant would call jurors, objected under Rule 606(b), which prohibits juror testimony on matters concerning jury deliberations or

look at

33

affecting a juror's decision-making. The trial court sustained the objection.

Counsel also introduced into evidence the notes from the jurors, which the motion for new trial and defense counsel had purported to include comments regarding "the jury's desire to hear a clarification regarding the law of parties." Defense Motion for Pretrial Exhibit 7. At the hearing, counsel explained that the jurors' notes were quite clear that the jury was deliberating on the law of parties when unauthorized to do so by the Court's Charge, and therefore offered the notes for purposes of the appellate review. RR20@23-25

The trial court further allowed defense counsel to make a proffer of evidence in support of his motion. Defense counsel stated:

Your Honor, if Maribel Martinez had been called to the witness stand, it is the defense's belief that she would have testified accordingly, to wit: The jury found the defendant guilty based on the law of

parties, and they wanted clarification on the law of parties. There were a lot of unanswered questions, and there was nothing to say that he actually did it, and there was not enough evidence to convict him of murder but he might have been working with someone else. She also discussed other concerns she had such as money being left and the jewelry on the body being left. I also believe, had she been allowed to testify here this afternoon, Your Honor, that she would have testified accordingly, and I offer that proffer for purposes of appellate process. RR20@29-30

Appellant Almaguer asserts that an "outside influence" was improperly brought to bear upon the jurors, the Law of Parties discussed during voir dire. The Court erred by denying Appellant a post-conviction inquiry into whether the "outside influence" was in fact brought to bear on the jury during deliberation such that would violate Texas Rule of Appellate Procedure section 21.3(g). Because the Court sustained

35

the State's objection couched in Texas Rule of Evidence 606(b), Appellant was not afforded an opportunity to develop the record on appeal in order for this Court to review whether in fact a violation of 21.3(g) occurred such that would entitle Appellant a new trial based on jury misconduct. Appellant asserts Rule 606(b) was applied unconstitutionally in this case and operated to violate the appellant's constitutional rights. Appellant asserts that the trial court abused its discretion in denying the appellant's motion for a new trial.

## PRAYER

Appellant Almaguer prays that this Court make findings that the evidence in this case was insufficient for a rational trier of fact to find beyond a reasonable doubt that Appellant Almaguer intended to cause the death of Evan and Wilda Squires. Further, Appellant Almaguer prays this Court make findings that the evidence in this case was insufficient for rational trier of fact to find beyond

36

a reasonable doubt that Appellant Almaguer was present at the time that the murders occurred. Further still, Appellant Almaguer prays that this Court make findings that the evidence in this case was insufficient for a rational trier of fact to find beyond a reasonable doubt that Appellant Almaguer actually caused the death of Evan and Wilda Squires. Appellant prays this Court make the aforementioned findings and render a judgment of acquittal accordingly.

Subject to a ruling and without waiving the foregoing, Appellant prays that this Court make findings that the trial court erred in denying Appellant a post-conviction inquiry into whether or not the jury engaged in misconduct as contemplated by Texas Rule of Appellate Procedure 21.3(g) when the trial court unconstitutionally applied Texas Rule of Evidence 606(b). As such, Appellant further prays that the trial court abused its discretion by denying Appellant Almaguer's Motion for New Trial. In so finding,

Appellant requests this finding cause this matter to be reversed and remanded for a new trial.

Respectfully submitted,

O. Rene Flores, P.C.
1308 S. 10th Ave
Edinburg, Texas 78539
Telephone No. (956) 383-9090
Facsimile No. (956) 383-9050

By: _____
      O. Rene Flores
      State Bar No. 24012637

ATTORNEY FOR APPELLANT

38

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Appellate Brief was served in accordance with the rules on the following persons:

Theodore "Ted" Hake
Assistant District Attorney
Hidalgo County District County Attorney
Appellate Division
Hidalgo County Courthouse
100 N. Closner
Edinburg, Texas 78539
By: Hand delivery

TDCJ #01918635
Arturo Sanchez Almaguer
Texas Department of Corrections
Connally Unit
3001 South Emily Drive
Beeville, Texas 78102

_____
O. Rene Flores

## CERTIFICATE OF COMPLIANCE

Pursuant to TRAP 9.4 (3), I hereby certify this Brief contains 7028 words.

_____
O. Rene Flores

39